IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DWAYNE R.,                )<br>                               )<br>            Plaintiff,        )<br>                               )<br>     v.                         )<br>                               )<br> NANCY A. BERRYHILL, Acting )<br> Commissioner of Social Security, )<br>                               )<br>            Defendant.      )<br>                               ) | No. 17 C 6343<br><br>Magistrate Judge<br>Maria Valdez |

# MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Dwayne R.'s claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's request to remand the Commissioner's decision is granted, and the Commissioner's motion for summary judgment [Doc. No. 24] is denied.

## BACKGROUND

### I.    PROCEDURAL HISTORY

On March 15, 2013, Plaintiff filed claims for both DIB and SSI, alleging disability since December 31, 2007. (R. 259–73.) The claim was denied initially and upon reconsideration, after which he timely requested a hearing before an

Administrative Law Judge ("ALJ"), which was held on February 4, 2016.[1] (R. 60–99.) Plaintiff personally appeared and testified at the hearing and was represented by counsel. Vocational expert ("VE") Grace Gianforte also testified. (*Id.*) At the hearing, questions regarding Plaintiff's reported self-employment income, alleged onset date, and date last insured arose. (R. 92–93.) A third hearing occurred on July 28, 2016. (R. 46–59.) VE Lee Knutson appeared but did not testify. (*Id.*) Before the third hearing, Plaintiff amended his onset date to March 15, 2013 and withdrew his request for DIB benefits. (R. 348, 429.)

## II. ALJ DECISION

On August 16, 2016, the ALJ issued her decision after proceeding through the five-step sequential evaluation process required by the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520 and 416.902(a); (R. 11–30). Having noted that Plaintiff met the insured status requirement of the Social Security Act through December 31, 2015, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since March 15, 2013, the alleged onset date.

At step two, the ALJ determined that Plaintiff had severe impairments of asthma, foraminal stenosis of the cervical spine, and anxiety disorder; and non-severe impairments of obesity, controlled hypertension, retinal detachment, post-repair of right inguinal hernia, knee pain, low back pain, and history of alcohol and cocaine use. (R. 14–15.) The ALJ also found that Plaintiff's complaints regarding his lumbar spine were not medically determinable impairments. (*Id.*) The ALJ

---

[1] An earlier hearing on September 30, 2015 was continued to allow Plaintiff to find representation. (R. 104–05.)

concluded at step three that these impairments, alone or in combination, did not meet or medically equal the severity of a listed impairment. (R.16.) *See* C.F.R. Pt. 404, Subpt. P, App'x 1. The ALJ analyzed Plaintiff's impairments under listings 1.02 (major dysfunction of a joint); 1.04 (disorders of the spine); 3.02 (chronic respiratory disorders); 3.03 (asthma); and 12.06 (anxiety and obsessive-compulsive disorders). (R. 16.)

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(b) with the following additional limitations: frequently stooping, kneeling, crouching, crawling, and climbing; no work in environments with exposure to concentrated pulmonary irritants such as dusts, odors, fumes, gases; no work around extraordinary hazards such as unprotected heights and dangerous moving machinery, but he could avoid ordinary workplace hazards such as boxes on the floor, doors ajar, and approaching persons or vehicles. Further, Plaintiff could never engage in fast-paced production work but could perform goal-oriented work. (R. 18.)

At step four, the ALJ concluded that Plaintiff could perform his past relevant work as a stocker and thus was not disabled. (R. 28–30.) In the alternative, at step five, based on Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including dining room attendant, dietary aide, and laundry worker. (R. 29.) The Social Security Administration Appeals Council

3

then denied Claimant's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts

to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d

at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

### III.   ANALYSIS

Plaintiff argues that the ALJ erred by: (1) failing to evaluate Plaintiff's symptoms collectively at step three; (2) improperly analyzing Plaintiff's subjective allegations of symptoms; (3) wrongly weighing the opinion of a non-examining state agency consultant; and (4) finding Plaintiff was capable of past work or other work in the national economy.

A.   **<u>Step Three</u>**

Plaintiff takes issue with the ALJ's evaluation of his collective impairments at step three, specifically with respect to his obesity. As of April 2016, Plaintiff had a Body Mass Index ("BMI") of 33.32, which is in the obese range. (R. 791). At step three, the ALJ is required to evaluate the claimant's individual impairments as well as the combined effect of all impairments, "without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923(c); *see Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004). The ALJ must "consider an applicant's medical problems in combination." *Goins v. Colvin,* 764 F.3d 677, 681 (7th Cir. 2014). Obesity may not be disabling by itself, but it may enhance the symptoms of other impairments. *See Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("It is one thing to have a bad knee; it is another thing to have a bad knee supporting a body mass index in excess of 40.").

In her decision, the ALJ goes through Plaintiff's non-severe and non-medically determinable impairments individually at step three, providing her explanation for why they are not severe impairments. (R. 14–16.) The ALJ determines that Plaintiff's obesity does not impose any additional restriction on the RFC, and that Plaintiff has no limitation beyond the restriction to "frequent" in terms of stooping, etc. as set forth in the RFC. (R. 15.) The only other times the ALJ mentions obesity is to state that Plaintiff testified he is being treated for obesity, to occasionally report his weight or BMI at doctor's visits, to note a record where Plaintiff was reported obese, and to note that Plaintiff was told to change his diet

7

and begin exercising in order to lose weight. (R. 18–25.) Plaintiff contends that that although the ALJ considered obesity on its own, she did not consider it in combination with his other impairments.

Plaintiff suffered from the severe impairments of asthma and foraminal stenosis of the cervical spine, as well as the non-severe impairments of knee pain. (R. 14–15.) The ALJ offered no analysis on the effects of Plaintiff's obesity on these impairments or his complaints of pain. The ALJ must consider how Plaintiff's obesity interacts with his pain and his other impairments and should consider the obesity when analyzing Plaintiff's complaints of knee and back pain. *See Barrett*, 355 F.3d at 1068 ("Even if [the claimant's] arthritis was not particularly serious in itself, it would interact with her obesity to make standing for two hours at a time more painful than it would be for a person who was either as obese as she or as arthritic as she but not both."); SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002) ("Obesity . . . commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body symptoms.").

Plaintiff asserts that his pain is exacerbated by his obesity. He points to his inability to walk a block without needing to rest and his inability to stand for more than a short period. (R. 66–75, 89–90.) The Commissioner responds that Plaintiff's obesity was inconsequential due to his BMI barely exceeding 30. However, ALJ did not analyze Plaintiff's obesity and find it inconsequential, she merely stated the BMI but failed to analyze it in combination with Plaintiff's other impairments.

8

The Commissioner argues that the ALJ considered doctors' opinions who noted Plaintiff's obesity, citing *Pepper v. Colvin*, 712 F.3d 351, 364–65 (7th Cir. 2013), which states that a failure to consider obesity in combination with the other impairments "may be harmless when the RFC is based on limitations identified by doctors who specifically noted obesity as a contributing factor to the exacerbation of other impairments." The Commissioner also points to two doctor's notes that simply list Plaintiff's height, weight, and BMI, and interpret that BMI as obese. (R. 480, 673.) However, these notes do not discuss Plaintiff's obesity in relation to his other impairments, and thus the ALJ's failure to consider Plaintiff's obesity was not harmless error.

### B. Subjective Allegations of Symptoms

Plaintiff next asserts that the ALJ erred in assessing Plaintiff's subjective symptoms.[2] An ALJ's subjective symptom determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *see also Elder*, 529 F.3d at 413 (holding that in assessing the credibility finding, courts do not review the medical evidence *de novo* but "merely examine whether the ALJ's determination was reasoned and supported."). An ALJ must give specific reasons for discrediting a claimant's

---

[2] The SSA has clarified that SSR 16-3p, "Evaluation of Symptoms in Disability Claims," applies when ALJs "make determinations on or after March 28, 2016." *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); Notice of Social Security Ruling, 82 Fed. Reg. 49462-03 n.27, 2017 WL 4790249 (Oct. 25, 2017). The ALJ's decision was issued on August 16, 2016, and therefore SSR 16-3p applies.

9

testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003) (quoting *Zurawski*, 245 F.3d at 887–88); *see* SSR 16-3p, 2017 WL 5180304.

The lack of objective evidence is not by itself reason to find a claimant's testimony to be unreliable. *See Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005). When evaluating a claimant's subjective allegations, the ALJ must also consider "(1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *see also* SSR 16-3p, 2016 SSR LEXIS 4 at *18–19. An ALJ's "failure to adequately explain his or her credibility finding … is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 1995).

First, Plaintiff argues that the ALJ's subjective symptom analysis is flawed because it relied on Plaintiff's lack of physical therapy or other treatment management. Plaintiff asserts that the ALJ failed to consider why Plaintiff did not follow through with treatments offered by his doctors. *See Thomas v. Colvin*, 534 F. App'x 546, 551 (7th Cir. 2013) (unpublished decision) ("[A]n ALJ must consider reasons for a claimant's lack of treatment (such as an inability to pay) before drawing negative inferences about the claimant's symptoms.") (citation omitted). The ALJ found that Plaintiff took Norco for his pain but did not try any other

10

suggested methods of pain management. (R. 28.) Plaintiff contends the ALJ did not consider his documented struggles with homelessness, indigence, and lack of coverage by insurance. (R. 980, 986, 1007.)

The ALJ stated that she did consider Plaintiff's financial struggles and lack of insurance coverage, but she also found that Plaintiff stated he was too busy to attend appointments at a pain clinic, and therefore must not have been in as much pain as alleged. (R. 28, 1119.) However, the treatment notes that the ALJ cites to do not show that Plaintiff turned down a pain clinic or physical therapy solely for being too busy. The report states that when Plaintiff was referred to a pain clinic, he stated it was "too expensive" and his insurance does not cover pain clinic visits. (R. 1119.) Although Plaintiff also stated he was "too busy" and unable to fit in an appointment at the pain clinic, the primary reason given was his inability to pay.

The ALJ also found that Plaintiff's doctors sought sources of physical therapy and pain management that would be covered by his insurance. (R. 28.) This statement is not supported by the record. The ALJ cites to one page in the record, which is an internal note from a nurse practitioner stating that she will discuss alternative places that may accept insurance with another nurse. (R. 1007.) She also stated that any information would be reviewed with patient at the next visit. (*Id.*) However, there is no evidence that the nurse was able to find a pain clinic that accepted Plaintiff's insurance, nor is there evidence that any information was passed on to Plaintiff. Moreover, this one statement does not outweigh the multiple times Plaintiff has reported that he could not afford physical therapy or pain clinic,

11

and his insurance did not cover either. (R. 980, 986, 1007.) While the ALJ states that she considered Plaintiff's financial restrictions, her explicit reasons for concluding that Plaintiff refused treatment misstate the record. *See Golembiewski v. Barnhart,* 322 F.3d 912, 917 (7th Cir. 2003) ("The ALJ must evaluate the record fairly.").

Next, Plaintiff claims that the ALJ erred in evaluating his subjective complaints when she considered Plaintiff's activities of daily living. An ALJ may not equate a claimant's ability to complete activities of daily living with the ability to sustain full-time work. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *see also Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). However, the ALJ should consider a claimant's activities of daily living as part of her overall analysis of his subjective complaints. *See* 20 C.F.R. § 404.1529(c)(3)(i); *Schmidt*, 496 F.3d at 844. The ALJ found that Plaintiff had no limitations in activities of daily living, and his ability to work, attend NA meetings and sponsor others, lead religious services, and do laundry demonstrates that his complaints of pain were exaggerated. (R. 28.) The ALJ further stated that there was no evidence that Plaintiff's job ended due to medical impairment, he was able to change a tire, and he reported walking more. (R. 27.)

Plaintiff does not dispute that his activities of daily living may be considered, but he argues that the ALJ's analysis misconstrued and impermissibly cherry-picked the record. While ALJ's are not required to discuss every piece of evidence in the record, *see McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011), they are also

prohibited from selectively citing only facts that support their conclusions. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant … evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). Although Plaintiff did change a tire, he reported that afterwards, he experienced back and leg pain at eight or nine out of ten with throbbing, numbness, and tingling. (R. 1003.) He also took extra Norco for the first four days after changing the tire. (*Id.*) These facts could tend to support Plaintiff's subjective complaints of pain, yet the ALJ did not appear to consider them in her analysis.

Plaintiff also alleges that the ALJ erred in discrediting Plaintiff's allegations of pain when he stated Plaintiff was working three days a week and was actively seeking work. In one set of treatment notes, the doctor reported that Plaintiff "works 3 days a week." (R. 597.) There is no other record of Plaintiff working three days a week, nor is there any evidence of what period of time he may have worked. Furthermore, "[t]here is no inherent inconsistency in being both employed and disabled." *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016); *see Wilder v. Chater*, 64 F.3d 335, 337–38 (7th Cir. 1995) ("The fact that someone is employed is not proof positive that he is not disabled, for he may be desperate and exerting himself beyond his capacity, or his employer may be lax or altruistic.").

Plaintiff points to his homelessness as a reason to seek and maintain employment. Plaintiff has had multiple periods of homelessness and has lived at the Salvation Army. (R. 258.) "A desperate person might force [himself] to work . . . but

13

that does not necessarily mean [he] is not disabled." *Richards v. Astrue*, 370 F. App'x 727, 732 (7th Cir. 2010) (unpublished decision) (citations omitted). The ALJ failed to take Plaintiff's financial difficulties into account when discussing his attempts at employment during the relevant period.

### C. <u>Remaining Arguments</u>

The Court expresses no opinion about the decision to be made on remand but encourages the Commissioner to use all necessary efforts to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those conclusions may be. *See, e.g.*, *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions."); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994). The Commissioner should not assume that any other claimed errors not discussed in this Order have been adjudicated in her favor.

14

## CONCLUSION

For the foregoing reasons, Plaintiff's request to remand the Commissioner's decision is granted, and the Commissioner's motion for summary judgment [Doc. No. 24] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this order.

**SO ORDERED.**  **ENTERED:**

*/s/ Maria Valdez*

**DATE:     April 8, 2019**  _____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**